PER CURIAM.
 

 In this workers’ compensation case, Claimant challenges an order of the Judge of Compensation Claims (JCC) denying benefits on the ground she violated section 440.105, Florida Statutes (2006), by making false or misleading statements for the purpose of obtaining workers’ compensation benefits. Claimant also challenges
 
 *618
 
 the JCC’s findings in the alternative that she is not entitled to temporary total disability (TTD) benefits or temporary partial disability (TPD) benefits. For the reasons expressed below, we reverse the finding of fraud or misrepresentation, and reverse the denial of TTD benefits, but affirm the denial of TPD benefits.
 

 It is illegal for any person to make “any false, fraudulent, or misleading oral or written statement” for the purpose of obtaining workers’ compensation benefits. § 440.105(4)(b), Fla. Stat. (2006). An employee found to have knowingly or intentionally done so is not entitled to benefits. § 440.09(4)(a), Fla. Stat. (2006). Here, the JCC found, “Claimant intentionally or knowingly has made numerous false and misleading statements with regards to the extent of her current injuries and which were made for the purpose of obtaining workers’ compensation benefits.” He continued:
 

 These statements include reporting pain complaints grossly out of proportion to the physical findings on examination and diagnostic studies, by her reporting non-organic physical signs including collapsing ankle weakness in the face of a normal MRI, by her posturing and cog wheeling, and by her persistent attempts to be placed on TTD status. This also includes her evasiveness with Dr. Graham-Smith. While no one example in and of itself may rise to the level to support the EC’s fraud defense, taken together, they present an overwhelming pattern of statements, behavior, and conduct that cannot be innocently explained nor ignored by the undersigned.
 

 The items listed are not all “statements,” however, and the actual statements listed are not provably false or misleading. Claimant’s “attempts to be placed on TTD status” and reports of pain were statements, but they are not provably false or misleading. The E/C did not submit, for example, evidence that Claimant actually did want to continue to work despite her request for TTD status, or some objective method of measuring the subjective phenomenon of pain and proving Claimant’s reports false.
 

 Claimant’s “posturing and cog wheeling” were not oral or written statements, but behavior identical to behaviors captured on surveillance in
 
 Dieujuste v. J. Dodd Plumbing, Inc.,
 
 3 So.3d 1275 (Fla. 1st DCA 2009), which this court found could not serve as the predicate for disqualification from benefits under sections 440.09 and 440.105. In other words, because there is no evidence in the record that Claimant told anyone she could or could not perform a certain behavior that her actions belied, there is no basis for a finding of fraud.
 

 The JCC’s finding that Claimant “report[ed] non-organic physical signs including collapsing ankle weakness” is not supported by the record. Dr. Graham-Smith’s medical records indicate he “found” collapsing ankle weakness, that is, found it on examination, and Dr. Graham-Smith’s testimony on the matter consisted of his reading from his note. Although the transcription shows Dr. Graham-Smith actually said while reading,
 
 “[tjhere was
 
 collapsing weakness of both ankles,” there is no evidence that Claimant made an oral or written statement that she had such weakness.
 

 Perhaps anticipating a challenge to his finding of misrepresentation, the JCC made alternative findings denying TTD and TPD benefits. TTD benefits are payable where a claimant has not reached maximum medical improvement (MMI) and is not yet released to work. § 440.15(2), Fla. Stat. (2006). TPD bene
 
 *619
 
 fits are payable where a claimant can show she has not reached MMI and “the medical conditions resulting from the accident create restrictions on the injured employee’s ability to return to work.” § 440.15(4), Fla. Stat. (2006). As part of establishing entitlement to TPD benefits, “[a] claimant must show a causal connection between his or her injury and a subsequent wage loss.”
 
 Arnold v. Fla.’s Blood Ctrs., Inc.,
 
 949 So.2d 242, 247 (Fla. 1st DCA 2007).
 

 Here, the JCC denied TTD benefits based on his acceptance of Dr. Chapa’s testimony that Claimant reached MMI with no permanent impairment or work restrictions on March 7, 2007, over that of Dr. Graham-Smith because “there [are] no objective findings upon which Dr. Graham-Smith had to base [sic] his opinion.” The JCC also denied TPD benefits, finding that Claimant failed to prove a causal connection between her work injury and her subsequent wage loss, specifically because she had no work restrictions once she left her employment on February 17, 2007, after Dr. Curtis placed her at MMI with no permanent impairment as of February 9, 2007.
 

 The record does not support the JCC’s findings of fact. Claimant had “no-work slips” from Dr. Graham-Smith that applied from April 3, 2007, until June 27, 2007. Even though the JCC may have been entitled to reject Dr. Graham-Smith’s medical opinion, the fact of the no-work slips remains. Because Claimant did not have notice that she was able to work during the time her no-work slips excused her from work, Claimant was entitled to TTD benefits from April 3 to June 27.
 
 See Cocho v. Continental Baking,
 
 648 So.2d 1203, 1204 (Fla. 1st DCA 1995) (“[E]ven absent medical evidence of total disability or an unsuccessful work search, TTD should be awarded where the claimant’s physician never communicated to the claimant a release to return to work.”). The record does support, however, the ruling denying TPD benefits from the date of accident and continuing, because there is no evidence of any work restrictions other than the no-work slips.
 

 AFFIRMED in part, REVERSED in part, and REMANDED for findings consistent with this opinion.
 

 PADOVANO, LEWIS, and THOMAS, JJ., concur.